S04A1706. WOODARD v. THE STATE.
(607 SE2d 592)

BENHAM, Justice.

Ernest Lee Woodard challenges in this appeal his convictions for the murder of Rio Barber, an aggravated assault against Steve Kyler, an aggravated assault against Quinton Dillard, and possession of a firearm during commission of a crime.[1] The evidence at trial established the following. As Barber, Kyler, Dillard, and another friend

---

[1] The crimes were committed on August 9, 1997, and Woodard was indicted by the Fulton County grand jury on September 25, 1998, for malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), aggravated assault (three counts), possession of a firearm by a convicted felon, and possession of a firearm during commission of a crime. A jury trial conducted December 7-9, 1999, resulted in verdicts of guilty

walked along a street in Fulton County, they were confronted by Woodard who pointed a pistol at the group of friends and, as the group ran in fear of being shot, began firing. Barber was struck in the abdomen by a single bullet. One of the group of friends and a cousin of Barber's who was nearby testified Woodard was the shooter. In the ambulance on the way to the hospital, Barber was asked who shot him and answered, "Fox." Other testimony established Woodard was known in the neighborhood as Fox.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Woodard guilty beyond a reasonable doubt of the offenses for which he was convicted and sentenced. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court's imposition of a sentence of life without the possibility of parole for malice murder was based on the State's notice of intent to seek recidivist punishment pursuant to OCGA § 17-10-7 and on the admission into evidence of certified copies of five previous felony convictions. Since none of the felonies listed on the notice of intent to seek recidivist sentencing is a "serious violent felony" as defined in OCGA § 17-10-6.1, Woodard is not subject to sentencing as a recidivist under OCGA § 17-10-7 (b). *Ball v. State*, 233 Ga. App. 859 (2) (506 SE2d 149) (1998). The State concedes that sentence is illegal if it was based on subsection (c) of OCGA § 17-10-7:

> Since murder is a capital felony and OCGA § 17-10-7 (c) expressly excepts from its purview capital felonies, it follows that a sentence under that Code section is a punishment which the law does not allow to be imposed for murder.... [A] sentence which is not allowed by law is void.... [Cit.] That being so, the sentence of life imprisonment without possibility of parole must be vacated and the case remanded to the trial court with direction to enter a legal sentence.

---

on all counts of the indictment. The trial court sentenced Woodard immediately after the return of the verdict to life in prison without possibility of parole as a recidivist for malice murder, to concurrent terms of twenty years on two counts of aggravated assault, and to a consecutive term of five years for possession of a firearm during commission of a crime. The trial court did not sentence Woodard for the two felony murder counts and their underlying felonies, aggravated assault against the murder victim and possession of a firearm by a convicted felon, deeming them all to have merged into the malice murder conviction. But see *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). A timely motion for new trial was filed on December 9, 1999, and was denied by an order dated October 24, 2001. A motion for out-of-time appeal was granted on April 24, 2002, pursuant to which a notice of appeal was timely filed on May 16, 2002. The appeal was docketed in this Court on June 22, 2004, and was submitted for decision on the briefs.

*Funderburk v. State*, 276 Ga. 554, 555 (2) (580 SE2d 234) (2003). The same result is required in this case.

3. The trial court admitted into evidence as a dying declaration testimony that Barber identified Woodard as the person who shot him. Woodard enumerates that decision as error, arguing the evidence did not show, as required, that Barber was conscious of his impending death.

"Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." OCGA § 24-3-6. Before the deceased's statement is admitted into evidence, the trial court determines a prima facie showing has been made. *Walton v. State*, 278 Ga. 432 (1) (603 SE2d 263) (2004).

> "It need only appear to the court from the circumstances of the case that there was a probability that the deceased was conscious of his condition at the time he made the statement. . . ." [Cit.] The testimony introduced as dying declarations need not "contain any statement by the deceased to the effect that he was conscious of impending death at the time the declarations were made, since this may be inferred from the nature of the wounds and other circumstances." [Cits.]

*Morgan v. State*, 275 Ga. 222, 224 (5) (564 SE2d 192) (2002). Here, the seriousness of the wounds, the pain Barber was suffering, his death after extensive efforts to save him, and the testimony of the paramedic who treated him that he seemed to be conscious that he had suffered a fatal wound were circumstances sufficient to establish a prima facie showing for the admission of the statement as a dying declaration. *Walton v. State*, supra.

4. Woodard's requested jury instructions included three charges on identification, one of which was a verbatim copy of the pattern jury charge on the subject. During the charge conference, the trial court rejected two of the requested instructions, but said it would give the pattern charge. The trial court failed to do so, however, and Woodard now enumerates as error the failure to give the requested pattern charge.

In arguing that no error occurred, the State relies primarily on the principle stated in *Young v. State*, 226 Ga. 553, 557 (7) (176 SE2d 52) (1970):

> This court has previously held that there is no requirement of our law that a trial judge warn the jury against the possible dangers of mistaken identification of an accused as

the person committing a crime. [Cit.] The trial judge stressed the necessity for the offense charged to be proved beyond a reasonable doubt, and it was not error to refuse to give the requested instructions.

Were the State to invoke that principle in support of the trial court's rejection of the other charges on identification Woodard requested, we would find it applicable. Those requested charges, like the instructions rejected in *Young*, were argumentative and went well beyond the pattern charge's statement of the factors to be applied in evaluating identification testimony. We do not find *Young* applicable, however, to the trial court's failure to give the requested pattern charge the trial court said it would give. "A requested charge should be delivered if it is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given. [Cits.]" *Pruitt v. State*, 258 Ga. 583, 588 (13) (373 SE2d 192) (1988). Since the pattern jury charge on identification meets that definition and was not substantially covered by the charge actually given, the trial court's failure to give the charge was error. However, "an error is harmless if it is 'highly probable that the error did not contribute to the jury's verdict.' [Cit.]" *Alexander v. State*, 263 Ga. 474, 476 (2) (b) (435 SE2d 187) (1993). Because the pattern charge the trial court said it would give concentrates on matters such as opportunity to observe whereas defense counsel concentrated in closing argument on the credibility of the witnesses, as to which the trial court adequately charged the jury, we conclude it is highly probable the error in failing to give the promised charge did not contribute to the verdict. Accordingly, the error was harmless and does not require reversal.

5. Finally, Woodard complains of the trial court's failure to charge on venue.

[T]he State presented direct evidence that the crimes were committed in Fulton County, the county in which the case was tried; the trial court gave a complete charge on reasonable doubt; and it also instructed the jury that the crimes as alleged in the indictment must be proven beyond a reasonable doubt. The indictment clearly stated that the crimes were committed in Fulton County. Although a separate charge on venue would have been preferable, [cit.], we continue to apply binding precedent [*Harwell v. State*, 230 Ga. 480 (1) (197 SE2d 708) (1973); *Forehand v. State*, 235 Ga. 295 (3) (219 SE2d 378) (1975); *Wright v. State*, 191 Ga. App. 392 (1) (381 SE2d 601) (1989)] and decline to reverse [the] conviction on that basis.

*Shahid v. State*, 276 Ga. 543, 544 (2) (579 SE2d 724) (2003).

*Judgment of conviction affirmed; sentence vacated in part and case remanded with direction. All the Justices concur.*

DECIDED JANUARY 10, 2005.

*Carl P. Greenberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Raina J. Nadler, Assistant Attorney General*, for appellee.